### Commonwealth v. Goodwin

*Joseph J. Nelson,* District Attorney, for Commonwealth.

*Joseph P. Valentino,* for defendant.

ACKER, J., September 29, 1972.—Through a motion for new trial and in arrest of judgment, defendant desires to upset a jury verdict of guilty of driving while under the influence of intoxicating beverages. The evidence of intoxication was more than sufficient to permit a jury to conclude that on October 4, 1971, at about 7:40 p. m., defendant, while under the influence of intoxicating beverages, drove her vehicle into the back of a police vehicle stopped at the exit ramp from the Hickory Township Municipal Building. Although the story of defendant may not be labeled as incredible, it was to say the least unusual. Her contention was that she had left her place of employment in Coraopolis to meet with a female friend at Isabella's Bar and Restaurant in New Castle. While there, she had one full drink of vodka and Seven-Up mixed and one-half of a second vodka and Seven-Up. She arrived there at about 6 and left at about 6:40 to 6:45. She believed that she had been followed by a man even before she arrived at New Castle, but that when she came out of Isabella's, the man was still behind her and continued to follow her all the way into Hickory Township. She, therefore, pulled into a gas station with the man still being behind her. Apparently, the man went on and she purchased a pack of cigarettes. She made no mention to the attendant of anyone following her, however. As she proceeded up Route No. 18 towards Route No. 62 where she would normally turn to the east to go to her home, the man took up behind her again. At the junction of the Freeway or Bypass 62 with Route No. 18 instead of turning to the right as she normally would to go home she continued straight to Business Route No. 62. At this point she did not know whether the pursuer was still behind her but nevertheless, upon the change of light, she continued up Route No. 18 to the Hickory Township Municipal

Building. Not knowing whether the man was behind her, as a form of insurance she turned into the Municipal Building and passed around the back of it toward the exit where she inadvertently struck the rear end of the police cruiser only because the officer did not promptly pull out into the road as she had anticipated he would. There was more than ample evidence of her intoxication at the scene, on the way to the Pennsylvania State Police Barracks in Mercer for the purpose of undergoing a sobriety test, during the course of the test and on the way back. Her mood changed from that of being jovial to anger. She threatened to get one of the officers fired, she cried at times, she appealed to the emotions of the police officers stating that her daughter was in college and her son was a football star and she was a local citizen; she informed the police that she had had a glass of wine about 3 and that she had been drinking apple cider the rest of the day. As to why she struck the back of the police cruiser operated by Sergeant Frank Hast, she stated that, "she knew him well and wanted to know why the hell he didn't move he saw me coming." She inquired as to why the police did not go out and catch some criminals or why they didn't do something about drug abuse. She failed all of the coordination tests, had an odor of alcohol, difficulty in walking and had a .21 sobriety test result approximately one hour and 12 minutes after she was arrested.

The only contention briefed and argued by defendant was that the court erred in admitting into evidence the result of a breathalyzer test since the test was given approximately one hour and 12 minutes after defendant was operating her motor vehicle. This was preserved by a timely objection and is contained in paragraph 4(b) of the combined motion for new trial and in arrest of judgment.

*May a court permit a jury to consider the results of a breathalyzer test given an hour and 12 minutes after the defendant was operating a motor vehicle?*

The statutory permission to use chemical tests of breath is by the Act of December 22, 1969, P. L. 392, sec. 1, 75 PS §624.1. A reading of the statute fails to disclose any particular time element deemed to be sufficient or insufficient after the driving for the running of the test. Therefore, the time element must be determined by the court based on the facts of that particular case. The matter is, therefore, one where the trial court has wide discretion: Commonwealth v. Hartman, 383 Pa. 461, 119 A. 2d 211 (1956).

It is defendant's contention in the case at bar that the test results should have been denied as a matter of law. Therefore, the time element is of considerable import. All of that up to the striking of the police vehicle by the defendant is dependent upon the testimony of defendant. By that evidence, defendant arrived at Isabella's Bar and Tavern at 6 p. m. She remained about 40 to 45 minutes and had one and one-half mixed drinks of vodka. Therefore, her last possible consumption of alcohol by her version would have been at about 6:45. She had nothing further to drink that evening. The accident occurred between 7:50 and 7:55, between an hour and five minutes and an hour and 15 minutes after the last time that she could have had her last drink by her testimony. Her evidence of intoxication through her conduct remained constant throughout the period from her arrest and the conducting of the sobriety test approximately one hour and 12 minutes following her striking the police vehicle. Therefore, by her testimony, the last possible time that she could have consumed any alcohol would have been between two hours and 17 minutes and two hours and 27 minutes.

Although the lower court was sustained in granting a new trial in Commonwealth v. Hartman, supra, strongly relied upon by defendant, that case did not say that merely because a particular period passed from the driving to the test a new trial must be granted. As noted in Commonwealth v. Fetzner, 12 D. & C. 2d 180 (1957), the primary issue of the Hartman case was that the appeal was improperly taken in the first instance, since there was a mixed question of law and fact. It did not rule that an intoximeter or blood test is improper. It did rule that under the peculiar circumstances of that case, there was no abuse of discretion by the trial court.

The facts of the Hartman case, supra, readily demonstrate the distinction between it and the instant case. There, defendant did not drink prior to 3 p. m. Therefore, that which he did have to drink was not fully effective until 4:30 p. m. or about 15 minutes before the intoximeter was given, but 40 minutes after driving. Therefore, the full impact of the consumption of alcoholic beverage was not present at driving but was at the time of the taking of the intoximeter test. Hence, it was held that the intoximeter would not be indicative of the degree of intoxication at the time of arrest. In the instant case, because of the time element between the alleged last opportunity to drink and the running of the test, the maximum effect of the quantity of alcohol which defendant claims she consumed would have been apparent long before the actual running of the test and, in fact, the test would have indicated a less reading than at the time of the driving. Hence, there was no error in permitting the result of the test even though one hour and 12 minutes after the driving.

Defendant relies upon this court's decision in Commonwealth v. Kelly, 8 Mercer 186 (1968), where this

court noted that the time elapsed between the accident and the policeman's arrival, the drinking if any and the accident, the drive to the Greenville Hospital and the removal of blood, were all unstated critical facts in a motion to suppress which required proof. This court further noted that at the very least 45 minutes had expired and there would be a substantial question whether this test could be admitted into evidence if properly proven during a trial. In fact, as the testimony unfolded in that trial, the test was admitted into evidence resulting in a conviction. Also, in Commonwealth v. Kohute, 47 D. & C. 2d 195 (1969), it was held by this court that the question of whether there was too great a period of time elapsed between an accident and the taking of blood must be determined at the time of trial. There, the Hickory Police arrived at the accident scene at 1:50 a.m., found defendant at the Sharon General Hospital between 3 and 3:30 a. m., obtained a consent form 15 or 20 minutes later, now being 4 or 4:30 a. m. when the blood was finally taken.

Likewise, in Commonwealth v. Edmunds, 31 Beaver 142 (1971), a breathalyzer test administered an hour and a half after an accident was properly admitted into evidence, even though defendant had been drinking beer between the time of the collision and the test. The court held it was up to the jurors as the trier of facts to determine the import of the test. Also, in Commonwealth v. Peiffer, 51 D. & C. 2d 127 (1970), blood taken two and one-half hours after a collision was held to be admissible.[1]

[1] Toms v. State, 95 Okla. Crim. Rep. 60, 239 P. 2d 812 (1952), a breath test taken one hour and a half after the accident was not too remote in point of time, since the longer it was delayed the more favorable to defendant; State v. Gallant, 108 N. H. 72 (N. H. 1967), blood samples taken an hour and a half after the arrest was admissible; Greiner v. State, 157 Texas Crim. 479, 249 S. W. 2d 601 (Tex., 1952), blood samples taken four hours after an accident was ad-

One final case raised by defendant must be mentioned. That of Billow v. Farmers Trust Company, 438 Pa. 514, 266 A. 2d 92 (1970), where it was held that a doctor's testimony that a man with a blood alcohol content of .14 would be affected in his driving was properly held to be inadmissible because of the failure to show a degree of intoxication proving a defendant unfit to drive. However, it is not necessary under the definition of driving while under the influence of intoxicating beverages for a criminal conviction to prove that defendant was unfit to drive. Rather, even though the jury would not find him unfit to drive if it found as a result of the consumption of alcoholic beverages it substantially impaired the driver's judgment or clearness of intellect or any of the normal faculties essential to the safe operation of an automobile, a conviction may then be found.[2] Therefore, it would appear then, in this instance, at least the quantum of proof for a criminal conviction of driving while under the influence is less than that required for the proper use of intoxicating beverages in a civil case.

Although not specifically argued or briefed a parallel question is whether there was error in permitting the jury to determine from its own knowledge of common affairs the effect of alcoholic consumption when specific information was not given as to the rate of absorption in a person's system. Defendant's motion claimed that the court informed the jury as to the amount of time

missible; Davis v. State, 165 Texas Crim. 622, 310 S. W. 2d 73 (Tex., 1958), breath test given more than an hour after driving did not affect the admissibility of the results; People v. Markham, 153 Cal. App. 2d 260, 314 Pa. 2d 217 (1957), blood alcohol test given two hours after accident was admissible; Augusta v. Jensen, 241 Iowa 697, 42 N. W. 2d 383 (Iowa, 1950), one hour and 20 minutes was held to be admissible.

[2] Commonwealth v. Phillips, 169 Pa. Superior Ct. 64, 82 A. 2d 587 (1951).

it takes for alcohol to get into the system. This, however, was contrary to the wording of the charge. The court did, however, inform the jury in a general way that alcohol does pass through the system, the rate of which is dependent upon many factors.

The United States Supreme Court in Schmerber v. California, 384 U.S. 757, 86 S. Ct. 1826 (1966), recognized, at page 770:

"We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system."

Certain matters are regarded as common knowledge which a jury may use in its determination of guilt. For example, it is a matter of common knowledge that beer in sufficient quantity is an intoxicating beverage and that, if the time element is appropriate between an arrest and the time that the beer is served, it is not unreasonable to conclude that the patrons were visibly intoxicated before being served by consideration of the physical appearance, loss of locomotion and that not more than five minutes elapsed from the time that they were observed being served and the time that the police officers entered the premises: Green Gate Inn Liquor License Case, 185 Pa. Superior Ct. 214, 138 A. 2d 292 (1958). Commonwealth v. Peiffer, supra, specifically holds that the Commonwealth is not obligated to produce a witness to relate the result of blood test taken sometime after an accident back to the time defendant was operating his motor vehicle.

Hence, defendant is not entitled to a new trial because the inhalation test was one hour and 12 minutes after the accident.

## ORDER

And now, September 29, 1972, defendant's motion for new trial and defendant's motion in arrest of judgment are both denied.